IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| RHONDA SANDERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:14-cv-698-JA-GMB |
| ) | [wo] |
| HOWMEDICA OSTEONICS ) | |
| CORPORATION, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Pending before the court is Plaintiff's Motion to Compel (Doc. 47), which seeks supplementary responses to discovery requests propounded by Plaintiff Rhonda Sanders ("Sanders") on September 17, 2015. Defendant Howmedica Osteonics Corporation ("HOC") objected to further responses on relevance grounds, and maintains that objection. *See* Doc. 50. For the reasons stated below, the Motion to Compel (Doc. 47) is due to be DENIED at this time.

### I.   Background and Procedural History

Sanders filed her Complaint in the Circuit Court of Houston County, Alabama, alleging tort claims related to two hip-replacement surgeries performed on her in 2009. Doc. 1-4 at 4. During the surgeries, Sanders had the following artificial components implanted in her body: an Accolade® TMZF® Plus 127º Neck Angle V40™ Hip System, an LFIT™ Anatomic V4O™ Femoral Head, a TRIDENT® Hemispherical Acetabular Shell, an Acetabular Dome Hole Plug, and a Trident® X3® 0º Polyethylene Insert. Doc.

1-4 at 4. After the surgeries, Sanders experienced abdominal and hip pain and other illnesses. Doc. 1-4 at 4. By January 2014, Sanders underwent surgery to explant two components of the hip prostheses—the LFIT Anatomic V40 Femoral Heads and the Trident X3 Polyethylene Inserts. *See* Docs. 1-4 at 5 & 47-2.

The discovery requests at issue in Sanders' motion were styled as Plaintiff's First Set of Interrogatories and Plaintiff's First Request for the Production of Documents and Things to Defendants. *See* Doc. 47-1. Almost all of these requests asked for information relating to the manufacturing, design or marketing of the "medical device as described in Plaintiff's Complaint," the "medical device or any of its component parts involved in the lawsuit," the "subject product," or some similar formulation. *E.g.*, Doc. 47-1 at 5-14. HOC responded to both sets of requests on October 20, 2015, and included the following general objection in each set of responses:

### OBJECTION REGARDING PRODUCT IDENTIFICATION AND SCOPE

> HOC objects . . . inasmuch as Plaintiff has failed to specifically identify the components alleged to be at issue. Based upon Plaintiff's disclosures, the components at issue appear to be the Trident X3 Polyethylene Inserts and LFIT Anatomic V40 Femoral Heads implanted into Plaintiff Rhonda Sanders' left and right hips on or about June 25, 2009 and September 17, 2009, respectively. HOC further objects to the extent these Requests seek documents or information relating to products other than the subject Trident X3 Polyethylene Inserts and LFIT Anatomic V40 Femoral Heads implanted into Plaintiff Rhonda Sanders' left and right hips on or about June 25, 2009 and September 17, 2009, respectively. These responses are limited only to the subject Trident X3 Polyethylene Inserts and LFIT Anatomic V40 Femoral Heads at issue in this litigation and which were implanted into Plaintiff Rhonda Sanders' left and right hips on or about June 25, 2009 and September 17, 2009, respectively.

Doc. 47-1 at 3-4 & 17.  The individual discovery responses[1] at issue also incorporated this product-identification limitation. *See* Doc. 47-1 at 4-13 & 17-25.[2]  Subject to these objections, HOC produced 3,255 pages of documents. Doc. 47 at 2.

## II.   Discussion

The crux of this dispute is the relevance of information and documents relating to the components of Sanders' hip prosthesis systems that were implanted in 2009 and have not been explanted.  HOC argues that the issues presented in the lawsuit implicate only the explanted components; Sanders counters that she is entitled to information and documents relating to all components of the prosthetics regardless of whether they remain in her body or have been surgically removed.  Having considered the parties' submissions and the operative discovery requests and responses, the court finds that the record now before it does not establish the relevance of the information Sanders has requested on the hip prosthesis components that have not been explanted.

---

[1] Sanders seeks to compel supplemental responses to 29 requests.  The court notes that three of the subject responses did not repeat the general product identification limitation, but did reference and incorporate other responses that explicitly stated the limitation. *See* Doc. 47-2 at 7 (Response No. 7), 23 (Response No. 12), 24 (Response No. 16).

[2] On March 3, 2016, Sanders' counsel wrote for the first time to challenge HOC's objections to the scope of the requests.  Doc. 47-2.  Sanders also filed a motion to continue the trial on March 3, 2016 that was denied for the failure to meet and confer with defense counsel regarding the continuance.  Docs. 36 & 38.  On March 21, 2016, Sanders filed a second motion to continue, now seeking to reopen her expert discovery, to extend the discovery deadline to December 2016, and to continue the trial to May 2017.  Doc. 45.  Sanders premised her request for a continuance principally on the need for the information sought in the discovery responses subject to the pending motion to compel, which followed on March 23, 2016.  *See* Docs. 45 at 2-3 & 47.  In denying Sanders' request to continue the trial and other deadlines, United States District Judge John Antoon II noted: "Plaintiff's motion is in part based on [HOC's] failure to comply with Plaintiff's discovery requests.  If these failures did in fact occur, they are long standing, and Plaintiff failed to take timely action." Doc. 51.

The recent revision to Federal Rule of Civil Procedure 26 defines the scope of discovery broadly: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . . Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1), as amended December 1, 2015.  In light of this expansive scope and the underlying purpose of eliminating surprise at trial, *e.g., Berry v. Florida Int'l Univ. Bd. of Trustees*, 2008 WL 203362, at *2 (S.D. Fla. Jan. 23, 2008), "an objection that a discovery request is irrelevant . . . must include a specific explanation describing why the request lacks relevance, and why the information sought will not reasonably lead to admissible evidence." *Guzman v. Irmadan, Inc.*, 249 F.R.D. 399, 401 (S.D. Fla. 2008) (citing Fed. R. Civ. P. 26(b)(1); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 345 (1978)); *cf. Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1559 (11th Cir. 1985) ("[O]bjections which serve as the basis of a motion for protective order under Fed. R. Civ. P. 26 should be 'plain enough and specific enough so that the court can understand in what way the interrogatories are alleged to be objectionable.'") (quoting *Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981)).

The court finds that HOC's responses to Sanders' interrogatories and requests for production are precisely the type of objections contemplated by the Federal Rules of Civil Procedure.  The product-identification limitation was not meaningless boilerplate, but a plain explanation of HOC's interpretation of the proper scope of its responses.  This objection was clearly and consistently stated, and no claim has been made that HOC

4

obscured its basis for objection. In fact, HOC's product limitation framed the entire discovery process in this case, as the parties proceeded to conduct virtually all depositions and written discovery—with Sanders even putting up her own experts for deposition—before she filed her motion to compel.

In light of these objections, Sanders' sole argument for relevance is the claim that her complaint lists all of the implanted components in a preliminary section and elsewhere does not distinguish between these components and the subset that were explanted. *See* Docs. 1-4 & 47 at 2. To be sure, "complaints are important." *Bonds v. Hyundai Motor Co.*, 2015 WL 5522072, at *1 (M.D. Ala. Sept. 16, 2015). At the same time, while plaintiffs may initiate a lawsuit with a generalized complaint wherein "almost any defect is conceivable," through the course of discovery "the plaintiffs begin to define with more specificity the nature of the defect." *Id*.

Such is the case here. Sanders' expert witnesses have defined the nature of the alleged defect, and they have done so without the discovery materials she is now seeking. The record before the court reveals that none of Sanders' experts testified to a defect involving the still-implanted components, and each affirmed that he already had at his disposal all of the information he needed to form his opinions. Docs. 50-2, 50-3, 50-4. Sanders nevertheless posits that she needs extensive information on the implanted components in order to appropriately prepare her expert witnesses for trial, Doc. 47 at 4, but the court is persuaded by the experts' unequivocal statements disavowing any need

for additional information or documentation.[3] Moreover, the timing of Sanders' motion undercuts her claim of relevance, as Sanders opted to make her expert witness disclosures and tender her experts for deposition many months before she sought to compel HOC to produce information on the remaining prosthetic components.[4] Without more, the court finds that the relevance of the information sought has not been established, and the motion to compel must be denied.

### III.  Conclusion

Accordingly, it is ORDERED that Plaintiff's Motion to Compel (Doc. 47) is hereby DENIED, as further set out above.

DONE this 5th day of April, 2016.

/s/ Gray M. Borden
UNITED STATES MAGISTRATE JUDGE

---

[3] The court is not privy to the entire transcripts of Sanders' expert witnesses' depositions, only to brief excerpts selected by HOC.  If other testimony given during these depositions has some bearing on the relevance of the information Sanders seeks, she has not provided this testimony to the court.

[4] The most recent scheduling orders entered in this case required Sanders' expert disclosures no later than September 24, 2015, with discovery due to be completed on April 18, 2016, and dispositive motions to follow by May 20, 2016. Docs. 16 & 29.  By agreement of the parties, Sanders was allowed to disclose an additional expert witness on October 1, 2015. Doc. 39 at 2.